UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LUIS MATIAS, AIDA MATIAS,                :
and LUIS A. MATIAS, by and               :
through his parents, LUIS                :
and AIDA MATIAS,                         :
              Plaintiffs,      :
                               :
        v.                         :    CA 10-80 S
                               :
AMEX, INC., also known as                :
AMEX INDUSTRIAL COATING,                 :
INC.,                                    :
              Defendant.       :

**MEMORANDUM AND ORDER**

**GRANTING AMEX'S MOTION TO STRIKE**

Before the Court is the amended motion to strike[1] filed by Defendant Amex, Inc. ("Amex" or "Defendant"). The motion seeks to preclude Plaintiffs from utilizing in their opposition to Amex's pending motion for summary judgment: (a) two transcripts of interviews which Plaintiffs' counsel had with Gregory Sampson ("Sampson") and (b) a partial transcript of an interview of Johnnie Souza ("Souza") by Anthony Costello.[2]  For the reasons stated

---

[1] See Defendant Amex, Inc.'s Amended Motion to Strike All References to Hearsay Statements of Greg Sampson and Johnnie Souza from the Plaintiffs' Amended Statements of Undisputed Facts, Statement of Undisputed Facts and Amended Memorandum in Support of Their Objection to the Defendant's Motion for Summary Judgment (Docket ("Dkt.") #58) ("Amended Motion to Strike").

[2] See Amended Motion to Strike at 2 (asking Court to strike all references to Sampson's and/or Souza's statements from: (1) Plaintiffs' Amended Memorandum in Support of Their Objection to the Defendant's Motion for Summary Judgment (Dkt. #56) ("Plaintiffs' Amended Mem. Opposing S.J."); (2) Plaintiffs' Amended Statement of Disputed Facts Pursuant to LR Cv 56(a)(3) (Dkt. #54) ("Plaintiffs'

below, the motion is granted.

**Facts and Travel**

This is a negligence action. On or about June 24, 2009, Plaintiff Luis Matias ("Plaintiff" or "Mr. Matias") was employed by Senesco Marine, LLC ("Senesco"), as a welder. While working inside the cargo hold of an oil barge, Mr. Matias fell through scaffolding which had been constructed by Amex. As a result of the fall, he sustained serious injuries. In their Complaint, Mr. Matias, Aida Matias ("Mrs. Matias"), and Luis A. Matias, by and through his parents, Mr. and Mrs. Matias, (collectively "Plaintiffs"), allege that Amex was negligent in constructing, maintaining, and inspecting the scaffolding (Count I). Plaintiffs also allege that Amex was negligent in training and supervising its employees relative to the construction, maintenance, and inspection of the scaffolding (Count II).

Originally filed in the state superior court, the action was removed to this Court by Amex on February 24, 2010. During discovery, Plaintiffs' counsel noticed the deposition of Sampson for June 23, 2011.[3] Approximately thirty minutes prior to the

---

Amended SDF"); and (3) Plaintiff's [sic] Statement of Undisputed Facts Pursuant to LR Cv 56(a)(4) (Dkt. #55) ("Plaintiffs' SUF").

[3] See Defendant Amex, Inc.'s Reply to the Plaintiffs' Objection to Defendant's Motion to Strike All References to Hearsay Statements of Greg Sampson and Johnnie Souza from the Plaintiffs' Statement of Disputed Facts and Objection to the Defendant's Motion for Summary Judgment (Dkt. #52) ("Amex Reply") at 3.

scheduled starting time of the deposition, Plaintiffs' counsel contacted Amex's counsel and informed him that Sampson was "unavailable" and that the deposition would not be going forward.[4] Some four to six weeks later,[5] Plaintiffs' counsel recorded a telephone conversation which he had with Sampson. Approximately three months later, on or about November 19 or 20, 2011, Plaintiffs' counsel recorded an in-person interview of Sampson.[6] Both recordings were transcribed on or about November 21, 2011, and Plaintiffs' counsel received the transcripts ("the Sampson transcripts") on November 29, 2011.[7] It is unclear from the present record when Plaintiffs' counsel first came into possession of the transcript of Costello's interview of Souza ("the Souza transcript"). The document itself indicates that it was recorded on July 10, 2009.

On November 28, 2011, Amex moved for summary judgment on the ground that there was no evidence that Amex breached any duty to

---

[4] Id.

[5] Plaintiffs' counsel provided this temporal approximation information at the May 24, 2012, hearing in response to a question from the Court. See Electronic Recording of 5/24/12 Hearing.

[6] See n.5.

[7] See Letter from Cass to Martin, M.J., of 5/31/12 (Dkt. #61) at 1. Although the transcripts themselves reflect an unsigned certification date of November 28, 2011, see Plaintiffs' SUF, Ex. 11 (Phone Conversation with Gregory Sampson) at 28; id., Ex. 10 (Interview of Gregory Sampson) at 29, the Court accepts Plaintiffs' counsel's representation as to the date that they were actually transcribed.

Mr. Matias or that Amex proximately or actually caused his injuries.[8] In support of its motion for summary judgment, Amex argued, in part, that:

> there is no evidence whatsoever that would allow a reasonable jury to conclude that the subject scaffolding was defective on the date of the accident. The undisputed evidence actually shows that the subject scaffolding was not defective and was in good condition just fifteen to twenty-five minutes prior to Plaintiff's accident.[9]

Notice of the existence of the Sampson transcripts was mailed to Amex on December 9, 2011, in the form of a supplemental response[10] to Amex's March 23, 2010, request for production.[11] Plaintiff's supplemental response to request 2 of Amex's request for production stated:

> SUPPLEMENTAL RESPONSE: Objection, trial preparation privilege. Without waiving said objection, plaintiff's counsel has two recordings of conversations/interviews with Gregory Sampson and same have been transcribed as of November 21, 2011. Plaintiff asserts that the recordings

---

[8] See Defendant Amex, Inc.'s Motion for Summary Judgment (Dkt. #36) ("Motion for Summary Judgment").

[9] Defendant Amex, Inc.'s Memorandum of Law in Support of Its Motion for Summary Judgment (Dkt. #38) ("Amex S.J. Mem.") at 13.

[10] See Letter from Cass to Martin, M.J., of 5/31/12 at 1; id., Ex. A (Plaintiff Luis Matias' Supplemental Response to Requests for Production of Documents and Things Propounded by the Defendant, Amex. Inc. ("Plaintiff's 12/9/11 Supp. Response")).

[11] See Letter from Carroll to Martin, M.J., of 5/30/12 (Dkt. #60), Ex. B (Requests for Production of Documents and Things Propounded by the Defendant, Amex, Inc., to Be Answered by the Plaintiff, Luis Matias ("Amex's 3/23/10 Request for Production")).

and transcripts are privileged.[12]

One month later, on January 9, 2012, Plaintiffs' counsel sent an email to Amex's counsel, advising him that Plaintiffs' counsel had "turned over Mr. Sampson's statement/transcript to Mr. Schueler[13] for inclusion in his opinion,"[14] and that "under the rules, you are entitled to it as he intends to rely to some degree on it."[15] The email concluded: "The statements are attached."[16] Inadvertently, Plaintiffs' counsel only attached one of the transcripts to the email.[17] Amex brought the omission to the attention of Plaintiffs' counsel, and the other transcript was provided to Amex the same day (January 9, 2012).[18]

Plaintiffs' expert, Mr. Schueler, was deposed on January 11, 2012.[19] Amex's counsel represents that he "orally requested copies of the audio recordings [of the Sampson transcripts] ... at the

---

[12] Plaintiff's 12/9/11 Supp. Response at 1.

[13] Mr. Schueler is John A. Schueler, Plaintiffs' expert. See Plaintiff's [sic] Statement of Undisputed Facts Pursuant to LR Cv 56(a)(4) ("Plaintiffs' SUF"), Ex. 13 (Letter from Schueler to Cass of 7/22/11).

[14] See Letter from Cass to Martin, M.J., of 5/31/12, Ex. B (emails between Cass and Carroll January 9-10, 2012)

[15] Id.

[16] Id.

[17] See Letter from Cass to Martin, M.J., of 5/31/12 at 2; see also id., Ex. B.

[18] Id.

[19] See John A. Schueler Deposition Excerpts.

5

time of Schueler's deposition."[20]  Responding to this claim, Plaintiffs' counsel represents that he "does not recall any such conversation ...," and that "[o]nce the transcripts were provided, all writings [from Amex's counsel] addressing the matter lack any request for the actual recordings."[21]  Regarding the latter contention, Plaintiffs' counsel appears to be correct.[22]

Plaintiffs filed their objection to Amex's motion for summary judgment[23] on March 6, 2012, with a supporting memorandum[24] and a

---

[20] Letter from Carroll to Martin, M.J., of 5/30/12 at 1-2.

[21] Letter from Cass to Martin, M.J., of 5/31/12 at 3.

[22] Amex suggests that because the definition of the term "document," which appears in Amex's March 23, 2010, request for production, includes "any original and all copies of any ... tape or other sound recording ...," Letter from Carroll to Martin, M.J., of 5/30/12 at 1 (quoting Ex. B) and Amex was seeking the production of "documents and things," id., that Plaintiffs were obligated to produce the Sampson recordings without an additional request from Amex, see id.  While Amex is correct regarding the definition of "document," the Court is unable to fit the audio recordings squarely within any of the 25 document requests contained in Amex's request for production.  Accordingly, the Court does not find that Plaintiffs violated their discovery obligations by failing to provide Amex with copies of the audio recordings (or access to the originals).  However, the failure does appear to be at odds with the spirit of those obligations.  The Court makes this observation for the benefit of Plaintiffs' counsel should similar circumstances arise in the future.

[23] See Plaintiffs' Objection to the Defendant's Motion for Summary Judgment (Dkt. #46) ("Plaintiffs' Object to S.J.").

[24] See Plaintiffs' Memorandum in Support of Their Objection to the Defendant's Motion for Summary Judgment ("Plaintiffs' Mem. Objection to S.J.").

6

statement of disputed facts.[25] In both their memorandum and the statement of disputed facts, Plaintiffs relied in part upon the Sampson transcripts and the Souza transcript ("the Sampson/Souza transcripts" or "the Transcripts") as support for their opposition to Amex's summary judgment motion.[26] Plaintiffs argue that the statements contained in the Sampson transcripts establish that Amex did not inspect the scaffolding on the day Mr. Matias fell, that Sampson was not qualified to inspect the scaffolding, that the scaffolding was not inspected by a competent person, that the scaffolding's planks were not secure prior to the accident, and that an employee of Amex had moved a plank on the night before the accident.[27]

---

[25] See Plaintiff's [sic] Statement of Disputed Facts (Dkt. #47) ("Plaintiff's SDF").

[26] See, e.g., Plaintiffs' Memorandum in Support of Their Objection to the Defendant's Motion for Summary Judgment, ("Plaintiffs' Mem. Objection to S.J.") at 10-12.

[27] See Plaintiffs' Mem. Objection to S.J. at 10 ("no one truly inspected the scaffolding on the day before the injury or the day of the injury"); id. ("Per Greg Sampson, an AMEX employee and one of [Amex's] deemed competent persons, an AMEX employee had gone up to work on the staging the night before plaintiff fell and that the planks were moved the night before plaintiff's fall."); id. at 13 ("Directly contrary to [Amex]'s assertion of compliant scaffolding, Greg Sampson had in fact notified his supervisors that the scaffolding was not compliant with their requirement that the planking be secured."); Plaintiff's SDF ¶ 21 ("Souza had nothing to do with construction or inspection of the scaffolding section that plaintiff fell through."); see also Defendant Amex, Inc.'s Amended Memorandum of Law in Support of Its Motion to Strike All References to Hearsay Statements of Greg Sampson and Johnnie Souza from the Plaintiffs' Amended Statement of Disputed Facts, Statement of Undisputed Facts and Amended Memorandum in Support of Their

Amex responded on March 12, 2012, in a reply memorandum which posited, in part, that "[t]he statements of Greg Sampson that the Plaintiffs attempt to rely upon to create a question of fact are classic examples of hearsay statements that may not be considered at the summary judgment stage."[28] In particular, Amex asserted that "[t]he Plaintiffs' claim that the Defendant failed to inspect the subject scaffolding on the day of the accident is supported by nothing more than inadmissible hearsay."[29] Amex followed up on March 13, 2012, by moving to strike all references to the hearsay statements of Sampson and Souza from Plaintiffs' objection to Amex's motion for summary judgment and Plaintiffs' statement of disputed facts.[30]

Plaintiffs filed their objection to the motion to strike on March 29, 2012.[31] They attached as an exhibit to their memorandum

---

Objection to the Defendant's Motion for Summary Judgment ("Amex's Amended Mem. Re Motion to Strike") at 2 (summarizing Plaintiffs' argument).

[28] Defendant Amex, Inc.'s Reply to the Plaintiffs' Memorandum in Support of Their Objection to the Defendant's Motion for Summary Judgment (Dkt. #48) ("Amex S.J. Reply") at 7.

[29] Id.

[30] See Defendant Amex, Inc.'s Motion to Strike all References to Hearsay Statements of Greg Sampson and Johnnie Souza from the Plaintiffs' Statement of Disputed Facts and Objection to the Defendant's Motion for Summary Judgment (Dkt. #49) ("Motion to Strike").

[31] See Plaintiffs' Objection to the Defendant's Motion to Strike References to Statements of Greg Sampson and Johnie [sic] Souza from Plaintiff's Statement of Disputed Facts and Objection to

8

a March 20, 2012, affidavit from Sampson in which he swears that he has reviewed the Sampson transcripts and "that the information and statements contained in the transcripts are true and accurate to the best of [his] knowledge and belief."[32]

A hearing on Amex's motion for summary judgment and motion to strike was scheduled for April 18, 2012. However, prior to the hearing, the Court discovered that Plaintiff's statement of disputed facts[33] failed to comply with District of Rhode Island Local Rule ("DRI LR") 56(a)(3). Specifically, the Court discovered that the facts stated in Plaintiff's statement of disputed facts did not correspond numerically to the facts stated in Amex's statement of undisputed facts.[34] As a result, the Court canceled the April 18th hearing, ordered Plaintiffs[35] to file an amended

---

Motion for Summary Judgment (Dkt. #51) ("Plaintiffs' Objection to Motion to Strike").

[32] Plaintiffs' Memorandum in Support of Their Objection to the Defendant's Motion to Strike References to Statements of Greg Sampson and Johnie [sic] Souza from Plaintiff's [sic] Statement of Disputed Facts and Objection to Motion for Summary Judgment ("Plaintiffs' Mem. Re Motion Strike").

[33] See n.25.

[34] See Order Rescheduling Hearing and Ordering Plaintiff to File Amended Statement of Disputed Facts (Dkt. #53) ("Order of 4/17/12") at 1.

[35] The Order of 4/17/12 actually referred to "Plaintiff" in the singular because Plaintiffs captioned their statement of disputed facts as "Plaintiff's [sic] Statement of Disputed Facts" ("Plaintiff's SDF"), and the Court did not recognize that this was an error until Plaintiffs subsequently filed Plaintiffs' Amended SDF. It is clear, however, that Plaintiff's SDF was filed by all

9

statement of disputed facts which complied with DRI LR Cv 56(a), and rescheduled the hearing for May 24th.[36] The Court also ordered that Plaintiffs file, in accordance with DRI LR Cv 56(a)(4), a statement of undisputed facts if Plaintiffs contended there were additional facts not contained in Defendant's statement of undisputed facts which precluded summary judgment.[37] The Court further stated that if Plaintiffs filed such a statement, Amex was authorized to file a separate statement setting forth what facts contained in Plaintiffs' statement of undisputed facts were disputed.[38] Lastly, the Order of 4/17/12 authorized the parties to file amended memoranda relative to the pending motion for summary judgment and motion to strike "so that citations in such amended memoranda will refer to the documents filed pursuant to this Order and not to Plaintiff's SDF (Dkt. #47)."[39]

On May 1, 2012, Plaintiffs filed an amended statement of

---

Plaintiffs.  See Plaintiff's SDF at 11 (reflecting submission on behalf of all Plaintiffs).  Therefore, in the above discussion of the Order of 4/17/12, the Court refers to "Plaintiffs" in the plural even though the order referred to "Plaintiff" in the singular.  The Court does so to avoid confusion regarding a matter that is not at issue.

[36] See Order of 4/17/12 at 2-3.

[37] See id. at 3.

[38] See id. at 3-4.

[39] Id. at 4.

disputed facts,[40] a statement of undisputed facts,[41] and an amended memorandum in support of their objection to Amex's motion for summary judgment.[42] As allowed by the Order of 4/17/12, Amex filed a response to Plaintiffs' statement of undisputed facts on May 11, 2012.[43]

The Court conducted a hearing on the motion for summary judgment and the instant amended motion to strike on May 24, 2012. The same day this Magistrate Judge sent a letter to Amex's counsel, requesting any documentation which supported the statement in Amex's reply memorandum[44] that Amex had requested that Plaintiffs provide the audio recordings of Sampson's statements.[45] Amex's counsel responded in a May 30, 2012, letter with two attached exhibits.[46] Plaintiffs' counsel, in turn, responded to this correspondence on May 31, 2012, in a letter to this Magistrate Judge which had three exhibits.[47] Thereafter, both the motion for

---

[40] See Plaintiffs' Amended SDF.

[41] See Plaintiffs' SUF.

[42] Plaintiffs' Amended Mem. Opposing S.J.

[43] See Defendant Amex, Inc.'s Response to the Plaintiff's [sic] Statement of Undisputed Facts Pursuant to LR Cv 56(a)(4)[ ] (Dkt. #57) ("Amex's Response to Plaintiffs' SUF").

[44] See n.3.

[45] See Letter from Martin, M.J., to Carroll of 5/24/12.

[46] See n.10.

[47] See Letter from Cass to Martin, M.J., of 5/31/12.

11

summary judgment and the instant amended motion to strike were taken under advisement by the Court.

### Law

"Warding off summary judgment requires nonmovants to produce materials of evidentiary quality." Ambrose v. New England Assoc. of Schs. & Colls., 252 F.3d 488, 497 (1st Cir. 2001); see also Sánchez-Rodríguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 9 (1st Cir. 2012)("The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists."); Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)(same); cf. Chiang v. Verizon New England Inc., 595 F.3d 26, 34 (1st Cir. 2010) (alterations in original)(internal quotation marks omitted)("our indulg[ence of] all reasonable inferences in the nonmoving party's favor is bounded by that party's obligation to support the alleged factual controversy with evidence that is neither conjectural [n]or problematic"); Sánchez-Rodríguez, 673 F.3d at 9 (internal quotation marks omitted)("the party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his claim"); Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)("On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion.").

Thus, the nonmovant bears "the burden of producing specific

facts sufficient to deflect the swing of the summary judgment scythe." Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005)(quoting Mulvihill v. To-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)). "Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, '[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment.'" Id. (alteration in original)(quoting Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998)); accord Saccucci Auto Group. v. Am. Honda Motor Co., 617 F.3d 14, 25 (1st Cir. 2010)("inadmissible hearsay ... cannot be considered on a motion for summary judgment"); see also Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 666 (1st Cir. 2010)(holding that an "unauthenticated, unsworn document cannot be relied upon to defeat [defendant]'s motion for summary judgment"); Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 39 (1st Cir. 1993)("the nonmovant cannot avoid summary judgment merely by promising to produce admissible evidence").

**Discussion**

Amex argues that the Sampson/Souza transcripts are classic examples of inadmissible hearsay that may not be considered on a motion for summary judgment and that, accordingly, they must be stricken.[48] The Court is constrained to agree. It is clear from

---

[48] Defendant Amex, Inc.'s Amended Memorandum of Law in Support of Its Motion to Strike All References to Hearsay Statements of Greg Sampson and Johnnie Souza from Plaintiffs' Amended Statement

Plaintiffs' opposition to Amex's motion for summary judgment that they are offering the Sampson transcripts for the truth of the matters asserted therein (i.e., that the scaffolding was not inspected and that the planks were not secured). Plaintiffs are similarly offering the Souza transcript for the truth of the matter asserted therein (i.e., that Souza did not inspect the platform from which Mr. Matias fell).

Plaintiffs make several arguments in opposition to the motions to strike. None are persuasive. First, Plaintiffs appear to argue that Amex's contention that the Transcripts are hearsay is conclusory.[49] Plaintiffs fault Amex for failing to analyze the Sampson/Souza transcripts and determine whether or not the statements at issue are based on the personal knowledge of Sampson and Souza.[50]

As an initial matter, the Court observes that it is Plaintiffs' failure to put the statements of Sampson and Souza in affidavit form that created the problem which prompted the instant motion to strike. If Plaintiffs had done so, determining whether

---

of Disputed Facts, Statement of Undisputed Facts and Amended Memorandum in Support of Their Objection to Defendant's Motion for Summary Judgment at 1.

[49] See Plaintiffs' Memorandum in Support of Their Objection to the Defendant's Motion to Strike References to Statements of Greg Sampson and Johnie [sic] Souza from Plaintiff's Statement of Disputed Facts and Objection to Motion for Summary Judgment ("Plaintiffs' Mem. Re Motion to Strike") at 3.

[50] Id. at 3-4.

14

Sampson and Souza lack personal knowledge of any of the facts on which Plaintiffs rely would be a far simpler task. The affidavits would be, at most, only a few pages in length, and the facts contained in them would presumably be stated in an orderly manner in numbered paragraphs. In contrast, the Sampson transcripts total 53 pages, and the facts contained in them are not entirely presented in an orderly manner. Locating all the information that may bear upon, or relate to, a particular fact is a cumbersome task. Even if all information is located, in some instances its meaning is less than crystal clear. For example, on pages 5-6 of the Interview of Gregory Sampson, Sampson states that he inspected the scaffolding on the day that Mr. Matias fell by walking across it.[51] However, on pages 18-19, after some leading questions by Plaintiffs' counsel, Sampson appears to agree with Plaintiffs' counsel that he did not walk across the bridge that day.[52] This problem would not exist if Plaintiffs had prepared and submitted affidavits containing the facts Plaintiffs claim are in the personal knowledge of both Sampson and Souza. Thus, the Court is disinclined to fault Amex for not performing the kind of analysis Plaintiffs contend is necessary when Plaintiffs failed to put the statements of Sampson and Souza in the required affidavit form.

---

[51] See Plaintiffs' SUF, Ex. 10 (Interview of Gregory Sampson) at 4-6.

[52] See id., Ex. 10 at 18-19.

Moreover, the overriding problem with the Transcripts is not that the facts expressed in them are not within the personal knowledge of Sampson and Souza. The problem is that they are unsworn statements and fall squarely within the definition of inadmissible hearsay. See Ramírez Rodriguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 76 (1st Cir. 2005)("By definition, hearsay is a statement 'offered in evidence to prove the truth of the matter asserted.'")(quoting Fed. R. Evid. 801(c)); see also Steinle v. Warren, 765 F.2d 95, 100 (7th Cir. 1985)(holding that unsigned and unsworn transcript of interview "was inadmissible as probative evidence and was ineffective to defeat the motion for summary judgment").

Plaintiffs' second argument is that Amex has itself proffered an unsworn statement of Sampson in support of its motion for summary judgment.[53] Plaintiffs complain that Amex relies upon a statement of Sampson taken at the same time and in the same manner as the statement of Souza which Amex seeks to have stricken.[54] Thus, in Plaintiffs' view, Amex is acting inconsistently.

The short answer to this argument is that Plaintiffs were free in their opposition to the summary judgment motion to object to Amex's reliance on Sampson's unsworn statement. As far as the Court is aware, they have not done so. Accordingly, Plaintiffs

---

[53] See Plaintiffs' Mem. Re Motion to Strike at 4.

[54] Id.

16

arguably have waived this argument relative to the motion for summary judgment. Even if Plaintiffs have not waived it, the proper response to the procedural impropriety which Plaintiffs identify is not to allow both parties to utilize inadmissible evidence with respect to the pending motion for summary judgment, but to allow neither party to do so. Therefore, in considering the motion for summary judgment, the Court will bear in mind the fact that the Sampson statement which Amex has included as an exhibit in support of its motion for summary judgment is unsworn and inadmissible.

Third, Plaintiffs assert that Amex "has the recordings and takes no issue with the accuracy thereof."[55] However, Amex disputes that it has been provided with copies of the recordings or access to them.[56] Even if the Transcripts are accurate, this does not remedy the fact that they are still unsworn statements which Plaintiffs wish to utilize for the truth of the matters asserted therein. Accordingly, this argument fails.

Fourth, Plaintiffs cite the fact that Sampson has signed an affidavit stating that the Sampson transcripts are true and accurate to the best of his knowledge.[57] The affidavit is problematic for a number of reasons. It was not executed and filed

---

[55] Id.

[56] See Amex Reply at 3.

[57] Id. at 4; id., Ex A (Affidavit of Gregory Sampson).

as part of Plaintiffs' objection to Amex's motion for summary judgment, even though Sampson was clearly a witness that was available to Plaintiffs' counsel. It was also filed almost four months after the motion for summary judgment was filed, and this is a reason to view it with some caution. Cf. Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 5 (1st Cir. 1994)(stating that it was "significant" that an affidavit "was offered only after defendants had filed motions for summary judgment" and concluding that "plaintiff's affidavit should be disregarded in considering the propriety of summary judgment").[58] The affidavit does not transform the Sampson transcripts into admissible evidence. They are still inadmissible hearsay. See Grand Acadian, Inc. v. United States, 101 Fed.Cl. 398, 405 (2011)("Hearsay does not become admissible

---

[58] The Court recognizes that Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1 (1st Cir. 1994), involved the plaintiff's affidavit and that the plaintiff was an interested witness. Id. at 4-5 ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony changed."). Here it does not appear that Sampson is an interested witness. However, there are still strong similarities to Colantuoni. As Amex accurately notes, shortly after the incident, Sampson gave a statement in which he said he had personally walked the scaffolding that morning and that it was in good condition. See Amex Reply at 4. More than three years later, he spoke with Plaintiffs' counsel and stated (prompted to some degree by leading questions) that he did not go up onto the scaffolding that morning and that he did not inspect it other than by looking up at it from below. Id. There is no apparent explanation for this 180 degree change by Sampson regarding his actions on the day Plaintiff fell. Accordingly, the Court concludes that the March 20, 2012, bare bones affidavit executed by Sampson should be disregarded.

merely because the hearsay declarant testifies at trial."). In addition, the affidavit does solve the problem of Sampson's inconsistent and seemingly contradictory statements which are reflected in the Sampson transcripts.

Plaintiffs' fifth argument echoes somewhat their first argument. They again assert that the statements in the Transcripts are not hearsay because the statements are within the personal knowledge of Sampson and Souza.[59] Therefore, according to Plaintiffs, the statements need not be sworn to be considered in relation to the motion for summary judgment. This assertion is contrary to the law which the Court has already cited, and it is rejected. As the Court has previously noted, even if the statements are within the personal knowledge of Sampson and Souza, the Transcripts are still hearsay because they are unsworn.[60]

### Conclusion

For the reason stated above, Amex's amended motion to strike (Dkt. #58) is **GRANTED** and all references to Sampson's and Souza's statements are stricken from:

(1) Plaintiffs' Amended Mem. Opposing S.J. (Dkt. #56);

(2) Plaintiffs' Amended SDF (Dkt. #54);[61] and

---

[59] Plaintiffs' Mem. Re Motion to Strike at 5.

[60] Id. at 4.

[61] Accordingly, ¶ 23, ¶ 41, ¶ 42, and ¶ 43 of Plaintiffs' Amended SDF are stricken.

19

(3) Plaintiffs' SUF (Dkt. #55).[62]

So ordered.

ENTER:

*/s/ David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
September 27, 2012

---

[62] Accordingly, ¶ 99, ¶ 106, ¶¶ 109-112, ¶¶ 114-116, ¶¶ 119-125, ¶¶ 166-173 of Plaintiff's SUF are stricken.