```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF RHODE ISLAND


LUIS MATIAS, AIDA MATIAS,         :
and LUIS A. MATIAS, by and        :
through his parents, LUIS         :
and AIDA MATIAS,                  :
                Plaintiffs,       :
                                  :
          v.                      :    CA 10-80 S
                                  :
AMEX, INC., also known as         :
AMEX INDUSTRIAL COATING,          :
INC.,                             :
                Defendant.        :
```

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is Defendant Amex, Inc.'s Motion for Summary Judgment (Docket ("Dkt.") #36) ("Motion for Summary Judgment" or "Motion"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing was conducted on May 24, 2012. After listening to the arguments presented, reviewing the memoranda and exhibits submitted, and performing independent research, I recommend that the Motion be granted for the reasons stated herein.

**I. Overview**

This is a negligence action. Plaintiff Luis Matias ("Plaintiff" or "Mr. Matias") was injured when he fell through scaffolding while working as a welder inside the cargo hold of an oil barge. His employer at the time was Senesco Marine, LLC

("Senesco").  The scaffolding was constructed and maintained by Defendant Amex, Inc. ("Amex").  Plaintiffs, Mr. Matias, Aida Matias ("Mrs. Matias"), and Luis A. Matias, by and through his parents, Mr. and Mrs. Matias, (collectively "Plaintiffs"), allege that Amex was negligent in constructing, maintaining, and inspecting the scaffolding.  Amex has moved for summary judgment on the ground that there is no evidence that Amex breached any duty to Plaintiff or that Amex proximately caused Plaintiff's injuries.

**II. Facts[1]**

On June 24, 2009, Plaintiff was working for Senesco in North Kingstown, Rhode Island.  See Defendant Amex, Inc.'s Statement of Undisputed Facts Pursuant to LR Cv 56 (Dkt. #37) ("Amex's SUF") ¶ 9.  Two days before, Plaintiff had begun working inside the cargo hold of an oil barge.  Id. ¶ 10.  The hold was rectangular in shape, and two levels of scaffolding had been erected in a ring around the interior to allow workers to access the upper parts of the hold.  Id. ¶ 11.  In addition, a platform — also referred to as a "bridge" — had been erected to connect the port and starboard

---

[1] The Court states only those facts necessary for resolution of the instant motion.  Amex has advanced additional facts in support of its Motion.  These include that another welder, Kristopfer Reagan, walked behind Plaintiff on the bridge scaffolding approximately fifteen to twenty-five minutes before Plaintiff fell, and Reagan did not feel any loose or unsecured boards at that time.  See Amex's SUF ¶¶ 58-70.  Plaintiffs, however, have disputed these facts based on Mr. Matias' testimony that no one else was working on the bridge during the period he was working there.  See Plaintiffs' Amended Statement of Disputed Facts Pursuant to LR Cv 56(a)(3) (Dkt. #54) ("Plaintiffs' Amended SDF") ¶¶ 58-69, 80.  Therefore, the Court treats the Reagan testimony as disputed and does not include it in the Facts stated above.

scaffolding and to provide access to the middle of the "top" of the hold, where a welding seam was located. Id. The scaffolding and bridge were erected by Amex. Id. ¶ 12. The bridge where Plaintiff was working at the time of his accident was constructed following the completion of the main scaffolding, id. ¶ 18, and was nine boards wide, id. ¶ 21.

While the scaffolding was under construction, it was marked with a red tag, meaning that only Amex personnel were authorized to be on the scaffolding. Id. ¶ 25. After construction had been completed and Senesco had determined that the scaffolding was properly constructed, the scaffolding's tag would be changed to green. Id. ¶ 26. The green tag meant that Senesco employees would be allowed on the scaffolding. Id. Thereafter, the scaffolding was inspected regularly, meaning before the start of the first shift, at the start of the second shift, or if the work environment dictated a change in scaffolding. Id. ¶ 27. An Amex employee inspected the scaffolding every morning and filled out an inspection report sheet.[2] Id. ¶¶ 23, 28. The morning inspections conducted by Amex and were "confirmed" by Senesco.[3] Id. ¶ 28; see

---

[2] Plaintiffs dispute this fact. See Plaintiffs' Amended SDF. However, the Court has stricken the exhibits which Plaintiffs cite to establish that the fact is disputed. See Memorandum and Order Granting Amex's Motion to Strike (Dkt. #62) ("M & O of 9/27/12") at 19.

[3] Senesco's Environmental Health and Safety Manager, Dean Chapman, testified that Senesco "verified," Chapman Deposition ("Dep.") at 14, and "confirmed," id. at 15, Amex's morning inspections of the scaffolding. His answers suggest that he used both terms to describe the same action. See id. at 14-15. Plaintiffs note that the term "confirmed" was not

also id., Ex. 6 (Chapman Deposition ("Dep.")) at 14-15.

The scaffolding and bridge allowed Plaintiff to access the points that needed to be welded. Id. ¶ 30. Plaintiff first stepped foot onto the work platform two days before he fell. Id. ¶ 31. The day before the accident Plaintiff worked from approximately 6:30 a.m. to 5:00 p.m., see Plaintiff's Dep. at 75, and he walked on the work platform and had no problems. See Plaintiff's Dep. at 75-76; 112; see also Amex's SUF ¶ 38 ("[T]he Plaintiff walked across the very same boards on the day prior to the accident without them giving way."). When Plaintiff left work the day before the accident, none of the boards appeared to be dangerous. See Plaintiff's Dep. at 76; see also Amex's SUF ¶ 35; Plaintiffs' Amended Statement of Disputed Facts Pursuant to LR Cv 56(a)(3) (Dkt. #54) ("Plaintiffs' Amended SDF") ¶ 35.

Amex employee Greg Sampson ("Sampson") was responsible for inspecting the scaffolding on June 24, 2009, and making sure that none of the planks were misplaced and that nothing was visibly dangerous. See Amex's SUF ¶ 40. He completed a "Daily Scaffolding Check List" which indicated that the condition of the scaffolding was "good." Amex's SUF, Ex. 9 (Daily Scaffolding Check List). The scaffolding and bridge were also personally inspected at approximately 5:45 a.m. that morning by Senesco's safety specialist, Archibald Montgomery ("Montgomery"). Amex's SUF ¶ 47.

---

defined. Plaintiffs' Amended SDF ¶ 28.

Montgomery testified that '[t]here was nothing wrong," Montgomery Dep. at 32, with the scaffolding at that time, id.  He further testified that he walked across the bridge that morning and through the area from which Plaintiff later fell, id. at 33, 45, that the bridge appeared to be in a good and safe condition for work, id., and that based on his inspection Montgomery was comfortable letting Senesco employees work on the bridge, id. at 33-34.[4]

Although OSHA regulations did not require Plaintiff to use fall protection while he was working on the bridge, Senesco's own internal policies required fall protection for anyone who was working at a height of over four feet. Amex's SUF ¶ 54.  Plaintiff was aware of this requirement and testified that he walked around with his harness on "all the time."  Id. ¶ 55.  On the day of the accident, however, Plaintiff chose to ascend the bridge platform without the benefit of lanyard and harness protection. Id. ¶ 57. Plaintiff did so because the harness assigned to him had gotten wet the day before, and it was still wet when he arrived for work.  Id. ¶ 71.  On the two previous days, Plaintiff had noted an extra harness and lanyard attached to the bridge scaffolding railing, and he intended to use this equipment.  Id. ¶ 72.  However, when Plaintiff arrived on the bridge scaffolding, that harness and

---

[4] Plaintiffs do not dispute that "Montgomery inspected the bridge in question by walking it to look for gaps or 'bad planking' and to make sure that 'everything is intact, everything is in place.'"  Amex's SUF ¶ 46; see also Plaintiffs' Amended SDF ¶ 46 (stating that Amex's SUF ¶ 46 is "[n]ot disputed").

lanyard were no longer present. Id. ¶ 73. Although Plaintiff intended to go back down to find another harness, he decided to move some of his equipment to a different point on the platform before doing so. Id. ¶ 74. Plaintiff took this action even though he did not think it was safe to move his equipment without wearing a harness. Id.

Plaintiff testified that he had made two trips to move his equipment before the accident occurred. Id. ¶ 75. After two trips, he heard a "cracking noise," which was his first warning that something was wrong. Id. ¶ 76. He shined a work light that was affixed to the railing in the direction of the noise, and saw the other end of the board he was standing on was lifting. Id. ¶ 77.

Following the Plaintiff's accident, Montgomery ascended the platform to investigate what had happened. Id. ¶ 78. Montgomery observed a hole that had not been present when he inspected the bridge several hours before. Id. ¶ 79; see also Montgomery Dep. at 43-47. The planks, which had been covering the area where the hole was, had fallen to the ground. Plaintiff's Amended SDF ¶ 79; Amex's SUF ¶ 79; Montgomery Dep. at 46. After inspecting the bridge and investigating what had happened, Montgomery concluded that someone had moved several planks after he had finished his

inspection, creating the hole that Plaintiff fell through.[5] Amex's SUF ¶ 80.

Plaintiff does not know what caused the planks to give way, nor does he have any personal knowledge or information about how Amex may have caused or contributed to his accident. Id. ¶ 81. At his deposition, Plaintiff agreed that something happened from when he left work the day before to the point he stepped on the planks on the day of the accident to make them unable to hold him. See Plaintiff's Dep. at 112-113. He does not know who created this condition. Id. at 113. Plaintiff also agreed that in order for the planks to give way in the manner he described, that someone had to move them from when he left work the day before.[6] See id. at 112.

### III. Summary Judgment Standard

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed. R. Civ. P.

---

[5] Plaintiffs dispute this conclusion by Montgomery, but acknowledge that he so testified. See Plaintiffs' Amended SDF ¶ 80.

[6] Plaintiffs object to this statement as contained in Amex's SUF ¶ 82. However, Plaintiff's transcript supports the statement. See Plaintiff's Dep. at 112.

56(c)); accord Kearney v. Town of Wareham, 316 F.3d 18, 21 (1st Cir. 2002). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). The non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d

91, 94 (1st Cir. 2002)(alteration in original)(internal quotation marks omitted)(quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)).

"[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991)(citation and internal quotation marks omitted).

**IV. Negligence Law**

To properly assert a negligence claim, "a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." Santana v. Rainbow Cleaners, Inc., 969 A.2d 653, 658 (R.I. 2009). A party resisting summary judgment must set forth sufficient facts to support the necessary elements of his negligence claim. Splendorio v. Bilray Demolition Co., 682 A.2d 461, 467 (R.I 1996). Summary judgment is proper "if a plaintiff fails to present

9

evidence identifying defendants' negligence as the proximate cause of his [or her] injury or from which a reasonable inference of proximate causation may be drawn." Id. at 467. "Complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Santana, 969 A.2d at 657.

"The mere happening of an accident does not in and of itself necessarily warrant a reasonable and legitimate inference of negligence." Kennedy v. Tempest, 594 A.2d 385, 388 (R.I. 1998). For a plaintiff to prevail in a negligence action, he must introduce competent evidence to establish not only that the defendant owed a duty of care to the plaintiff and that that duty was breached, but also that the defendant's negligence was the proximate cause of the plaintiff's injury. Id.

**V. Discussion**

   **A. Amex's Argument**

Amex argues that in order for Plaintiff to maintain his negligence claim against Amex, he is required to do more than simply make allegations that are supported by nothing more than conjecture. Defendant Amex, Inc.'s Memorandum of Law in Support of Its Motion for Summary Judgment (Dkt. #38) ("Amex S.J. Mem.") at 13. Amex correctly notes that Plaintiff must come forward with sufficient facts — evidence — to allow a reasonable jury to find that Amex breached a duty to him and that this breach in turned

caused or contributed to the cause of his accident and injuries. In Amex's view, there is no evidence that would allow a reasonable jury to made these necessary findings because the undisputed evidence shows that the scaffolding was not defective and was in good condition shortly before Plaintiff's accident.

### B. Plaintiffs' Arguments

#### 1. *Res Ipsa Loquitur*

Plaintiffs initially contend that they can avoid summary judgment based on the doctrine of *res ipsa loquitur*.[7]  See Plaintiffs' Amended Memorandum in Support of Their Objection to the Defendant's Motion for Summary Judgment (Dkt. #56) ("Plaintiffs' Amended S.J. Mem.") at 4-9.  Before the doctrine of *res ipsa loquitur* can be utilized in any negligence action three conditions must be met: (1) the accident or injury must be of a kind which does not occur in the absence of someone's negligence; (2) such accident or injury must be caused by an agency or instrumentality in the exclusive control of the defendant; and (3) it must not have been caused by any voluntary act or contribution on the part of the

---

[7] *Res ipsa loquitur*, a well-recognized legal principle, "establishes inferential evidence of a defendant's negligence, thus, making out a prima facie case for a plaintiff, and casts upon a defendant the burden of rebutting the same to the satisfaction of the jury." Olshansky v. Rehrig Int'l, 872 A.2d 282, 288 (R.I. 2005); see also Konicki v. Lawrence, 475 A.2d 208, 201 (R.I. 1984)("Res ipsa loquitur is not a rule of either procedural or substantive tort law, but only a shorthand expression for circumstantial proof of negligence—a rule of evidence. Thus, a plaintiff must still prove a case of negligence.")(internal quotation marks and citations omitted).

plaintiff. Marshall v. Tomaselli, 372 A.2d 1280, 1284 (R.I. 1977); see also Olshansky v. Rehrig Int'l, 872 F.2d 282, 288 (R.I. 2005)("*Res ipsa loquitur* requires the occurrence of an event that would not happen without negligence, committed by an agent who was acting within the *exclusive control of a defendant* and without any contributory or voluntary action by the plaintiff.").

In Parillo v. Giroux Co., 426 A.2d 1313 (R.I. 1981), the Rhode Island Supreme Court noted that § 328(D) of the Restatement (Second) of Torts (1965), "disavows the requirement of exclusive control," Parillo, 426 A.2d at 1320 (quoting Restatement (Second) Torts § 328(D)(1)(B) (1965)), and that "[a] party's negligence may be inferred when 'other responsible causes * * * are sufficiently eliminated by the evidence,'" id. "Exclusive control may eliminate other causes, but the critical inquiry is not control, but whether a particular defendant is the responsible cause of the injury." Id. The plaintiff is not required to exclude all other possible conclusions beyond a reasonable doubt. Id. It is enough that he make out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant. Id.

Here, based on the undisputed evidence, no reasonable jury could conclude that Amex's acts or omissions were the cause of Plaintiff's injury or that Amex breached a duty to him. The scaffolding was not under Amex's exclusive control. Once the

12

scaffolding was erected and green-tagged, Senesco and its employees had full access to it. More importantly, the scaffolding was inspected the day of the accident shortly before Plaintiff fell, and it was in good condition. Amex has produced documentary proof that its employee Sampson inspected the scaffolding that day and recorded that it was ready for use. See Amex's SUF, Ex. 9. Amex also points to Montgomery's testimony that he personally inspected the scaffolding that morning, including the area from which Plaintiff later fell, and it was in a good and safe condition. Even Plaintiffs' expert agreed that Amex was not required to watch the scaffolding all day long. See Schuler Dep. at 171. Moreover, Plaintiff does not know who created the condition that caused him to fall through the scaffolding, see Plaintiff's Dep. at 113, and he agreed that someone would have had to move the planks from the position that they were in the day before in order for him to fall as he did, id. at 112. In short, there is no evidence that Amex is responsible for Plaintiff's injury.

The law as stated by the Rhode Island Supreme Court in Carnevale v. Smith, 404 A.2d 836, applies with particular force to the instant case:

> The settled rule in this jurisdiction is that the mere occurrence of an accident, without more, does not warrant an inference that a defendant was negligent or that its negligence was the proximate cause of the plaintiff's injury. **Despite the evidentiary boost given a plaintiff allowed to rely upon res ipsa loquitur, the plaintiff must, of course, carry its burden of proof.** As Prosser explains, "(t)he inference must cover all of the

> necessary elements of negligence, and must point to a breach of the defendant's duty." Prosser, Torts, § 39 at 212 (4th ed. 1971). Where, however, the evidence does not disclose a sufficient balance of probabilities in favor of negligence, the doctrine is inapplicable, and the trial justice should direct the jury that the plaintiff has failed to carry its burden of proof.

Carnevale v. Smith, 404 A.2d 836, 840 (R.I. 1979)(case citations omitted)(bold added). Thus, it is insufficient for Plaintiffs "to show that the accident is of the kind that does not ordinarily occur without negligence: the negligence must point to the defendant." Konicki v. Lawrence, 475 A.2d 208, 210 (R.I. 1984). Here Plaintiffs have failed to identify any evidence pointing to negligence by Amex, and, thus, cannot meet their burden of proving that the negligence was more probably than not, that of Amex. See id. at 211.

Accordingly, to the extent that Plaintiffs rely upon *res ipsa loquitur* to avoid summary judgment, such argument should be rejected. I so recommend.

### 2. Alleged Breaches of Duty

In addition to invoking the doctrine *res ipsa loquitur*, Plaintiffs contend that Amex breached its duty to Mr. Matias in six ways. See Plaintiffs' S.J. Mem. at 9-16. First, Plaintiffs assert that "the bridge scaffolding was not constructed under the supervision and direction of a competent person qualified in scaffold erection as required by OSHA 1926.451(f)(7)." Id. at 9. Second, Plaintiffs claim Amex failed, through its employees, to

14

have a competent person supervise the modification of the bridge scaffolding the night before Mr. Matias fell.  Id. at 10.  Third, Plaintiffs contend that Amex failed to actually inspect the bridge scaffolding prior to the shift worked by Mr. Matias.  Id.  Fourth, Plaintiffs point to the fact that the planks on the bridge scaffolding were not screwed down as allegedly required by Amex's own policy.  Id. at 11.  Fifth, Plaintiffs claim that the person Amex deemed a competent person to inspect the scaffolding was, in fact, not properly trained.  Id.  Sixth, Plaintiffs maintain that for the scaffolding to have failed as it did, the planks could not have properly overlapped the support bars, and that "[t]his failure is another breach of the defendant's duty to the plaintiff."  Id. at 12.

With respect to the first of the above contentions, the reasoning expressed in Plaintiffs' S.J. Mem. is not entirely clear.  See id. at 9-10.  However, the argument ultimately fails because Plaintiffs rely for a key portion of it on exhibits which the Court has stricken.  See id. at 9 (citing Plaintiffs' SUF ¶¶ 99, 100); see also  (Dkt. #62) ("M & O of 9/27/12") at 19 (striking all references to Sampson's and Souza's statements from Plaintiffs' Amended S.J. Mem., Plaintiffs' Amended SDF, and Plaintiffs' SUF).

The same is true with respect to the second, third, and fifth contentions.  Plaintiffs based their assertions, either fully or partially, on exhibits which the Court has stricken.  Accordingly,

15

these claims of alleged breaches in duty by Amex also fail.

Plaintiffs' fourth contention, i.e., that the planks on the bridge scaffolding were not secured as allegedly required by Amex's own policy, is based on Plaintiffs' SUF ¶¶ 87 and 169. Amex disputes both of these facts. See Defendant Amex, Inc.'s Response to the Plaintiff's [sic] Statement of Undisputed Facts Pursuant to LR Cv 56(a)(4) (Dkt. #57) ("Amex's Response to Plaintiffs' SUF) ¶¶ 87, 169. The Court finds Amex's disputation valid. Plaintiffs cite the following testimony of Jeff Wigmore to support the statement that "Amex had a policy to screw down every planking board." Plaintiffs' SUF ¶ 87. However, the testimony cited is:

> Q. Okay. Did Amex have any policy or procedure for securing the boards?
>
> A. Amex, yes. We tried to screw down the boards.
>
> Q. Every board?
>
> A. If possible.

Wigmore Dep. at 46. The above does not sufficiently support Plaintiffs' claim that "Amex had in place a policy that each and every plank was to be screwed down." Plaintiffs' Amended S.J. Mem. at 11. The cited testimony is far more suggestive of a practice than a "policy." In addition, Plaintiffs' SUF ¶ 169, the other fact on which Plaintiffs rely for this alleged breach of duty, has been stricken. See M & O of 9/26/12 at 19. Accordingly, the Court is unpersuaded that Plaintiffs' fourth contention establishes a breach of duty by Amex to Mr. Matias.

Plaintiffs' sixth contention, i.e., that the planks that fell could not have properly overlapped the support bars (otherwise the scaffolding would not have failed as it did), is essentially a variation of Plaintiffs' *res ipsa loquitur* argument which the Court has already rejected. While the Court agrees with the proposition that in order for planks to fall they must have necessarily become dislodged from the posts supporting them, there is no evidence that this condition existed at the time of Amex's inspection and when Montgomery made his inspection for Senesco. To the contrary, the undisputed evidence indicates that the scaffolding was secure and not unstable. Accordingly, the Court is unpersuaded by Plaintiffs' sixth argument that Amex breached a duty to Mr. Matias.

### 3. Challenge to Amex's Factual Assertions

Plaintiffs' final argument is that some of Amex's factual assertions are in error. See Plaintiffs' S.J. Mem. at 12-16. The Court finds that extensive discussion of this argument is unnecessary for the following reasons. First, the exhibits which Plaintiffs rely upon to support some of their claims of factual errors have been stricken. Accordingly, Plaintiffs' challenge to these facts fails. Second, Plaintiffs devote two pages to challenging the testimony of Kristopfer Reagan, but the Court has not included any facts based on Reagan's testimony in this Report and Recommendation.[8] Third, the Court has accepted Plaintiffs'

---

[8] See n.1.

claim that the bridge scaffolding was completed later than the other scaffolding. See Facts supra at 3. This fact does not affect the Court's finding relative to the instant Motion. Fourth, the Court finds Plaintiffs' suggestion that the inspection of the scaffolding by Montgomery was cursory unpersuasive and not supported by his testimony.

**VI. Summary**

Plaintiffs' reliance on *res ipsa loquitur* to avoid summary judgment fails because there is no evidence which would allow a reasonable jury to conclude that Amex's acts or omissions were the cause of Plaintiff's injury or that Amex breached a duty to him. Plaintiffs' assertion that Amex breached a duty to Plaintiff based on six specific facts alleged by Plaintiffs also fails. The factual basis for five of these alleged facts has either been stricken or is not supported by the record. The sixth alleged fact is essentially a reiteration of the *res ipsa loquitur* argument which the Court has rejected. Lastly, Plaintiffs' claim that Amex relies in part on factual errors for the Motion is unpersuasive.

Because Plaintiff cannot prevail on his claim on negligence, the claims of Mrs. Matias and Luis A. Matias also fail. Accordingly, Amex is entitled to summary judgment against all Plaintiffs on both counts of the Complaint.

**VII. Conclusion**

For the reasons stated above, I recommend that Amex's Motion

for Summary Judgment (Dkt. #36) be GRANTED.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ *David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
September 27, 2012