UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
LUIS MATIAS; AIDA MATIAS; and LUIS  )
A. MATIAS, by and through his       )
Parents Luis and Aida Matias,       )
                                    )
          Plaintiffs,               )
                                    )
     v.                             )    C.A. No. 10-80 S
                                    )
AMEX, INC., also known as AMEX      )
INDUSTRIAL COATINGS, INC.,          )
                                    )
          Defendant.                )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

On September 27, 2012, Magistrate Judge David L. Martin issued a Memorandum and Order Granting Amex's Motion to Strike (ECF No. 62) and a Report and Recommendation (ECF No. 63) recommending that this Court grant Amex's motion for summary judgment. Now before the Court are Plaintiffs' Notice of Appeal of Memorandum and Order Granting Amex's Motion to Strike (ECF No. 66) and Plaintiffs' Objection to the Report and Recommendation Granting Amex's Motion for Summary Judgment (ECF No. 67.) For the reasons set forth below, Amex's motion to strike and its motion for summary judgment are both GRANTED in part and DENIED in part.

I.  Facts[1]

On June 24, 2009, Plaintiff Luis Matias ("Plaintiff" or "Matias") was employed as a welder for Senesco Marine, LLC ("Senesco").  He was injured when he fell through scaffolding constructed by Amex, Inc. ("Amex").  More specifically, Matias fell through a bridge that was built to connect the scaffolding on either side of a cargo hold in an oil barge.  Subsequently, Matias, along with Aida Matias and Luis A. Matias, the minor child of Luis and Aida (collectively "Plaintiffs"), filed this negligence action against Amex.

The Magistrate Judge granted Amex's motion to strike from the summary judgment record two transcripts of interviews with Gregory Sampson and one transcript of an interview with Johnnie Souza.  These interviews were recorded before Amex filed its motion for summary judgment and relied on by Plaintiffs in their objection to that motion.  Amex responded by moving to strike all references to the transcripts.  Plaintiffs filed an objection to the motion to strike and attached as an exhibit an affidavit from Sampson swearing to the truth and accuracy of the

---

[1] Because Magistrate Judge Martin's Report and Recommendation (ECF No. 63) contains a detailed discussion of the facts of this case, the Court will not exhaustively rehearse the facts here; rather the reader is referred to the Report and Recommendation.
Plaintiffs do contend, however, that the Magistrate Judge erred in his treatment of the facts.  Some of the asserted errors are considered elsewhere in this Order.  The others are not material to the outcome of this motion.

statements contained in the transcripts.[2] (Ex. A to Pls.' Obj. to Def.'s Mot. to Strike References to Statements of Greg Sampson and Johnie [sic] Souza from Pl.'s [sic] Statement of Disputed Facts and Obj. to Mot. for Summ. J. (Sampson Aff.), ECF No. 51-2.)

II. Discussion

    A. Amex's Motion to Strike

The First Circuit has held that "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998). However, "some forms of evidence, such as affidavits . . . , may be considered on summary judgment, even if they would not be admissible at trial, so long as they" meet the requirements of Rule 56 of the Federal Rules of Civil Procedure. Clearview Software Int'l, Inc. v. Ware, Civil No. 07-cv-405-JL, 2011 WL 4007397, at *2 (D.N.H. Sept. 9, 2011). More specifically, affidavits may be considered at the summary judgment stage "only when they are given on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify about

---

[2] A more detailed description of the facts surrounding the creation and use of the transcripts is provided in pages two through nine of the Magistrate Judge's Memorandum and Order Granting Amex's Motion to Strike (ECF No. 62.)

the matter in question." Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011); see also Fed. R. Civ. P. 56(c)(4).

    1.   The Souza transcript

The Magistrate Judge's decision to strike all references to the Souza transcript was clearly correct. Unsworn out of court statements may not be relied upon to defeat a motion for summary judgment. See, e.g., Steinle v. Warren, 765 F.2d 95, 100 (7th Cir. 1985) (refusing to consider an unsworn transcript at the summary judgment stage). In their notice of appeal, Plaintiffs argue for the first time that Souza's statements reflected in the transcript fall within the hearsay exclusion for statements by an agent of a party. See Fed. R. Evid. 801(d)(2)(D). However, because the transcript itself is an unsworn out of court document, Souza's statements within that transcript create a hearsay within hearsay problem. See Zurich Am. Ins. Co. v. Emp'rs Ins. Co. of Wausau, No. C03-29282L, 2005 WL 1719928, at *2 n.3 (W.D. Wash. July 25, 2005) (refusing to consider unsworn interview transcripts at the summary judgment stage because the transcripts "contain[ed] several layers of hearsay, at least one of which (the fact that the transcripts themselves are unsworn, out-of-court statements) is not subject to an exception to the hearsay rule"). Plaintiffs do not contend that the transcript itself falls within any hearsay exception, so this Court may not consider the transcript at the summary judgment stage.

2.  The Sampson transcripts

The Sampson transcripts present a different question because Sampson executed an affidavit swearing to the truth of the statements contained in those transcripts. Several courts have held that an initially unsworn statement may be considered at the summary judgment stage if it is subsequently reaffirmed under oath. E.g., DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach, 576 F.3d 820, 825-26 (8th Cir. 2009) (holding that an unsworn expert report subsequently verified by an affidavit may be considered at the summary judgment stage); Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 29 n.20 (1st Cir. 2005) (finding that the district court erred in declining to consider an expert report in ruling on a motion for summary judgment because "[t]he report was sworn to with an affidavit");[3] Citroner v. Progressive Cas. Ins. Co., 208 F. Supp. 2d 328, 335 n.2 (E.D.N.Y. 2002) (rejecting as "frivolous" the plaintiff's argument that his prior unsworn statement should not be considered at the summary judgment stage in light of the plaintiff's subsequent "sworn deposition testimony that

---

[3] At oral argument, Amex explicitly analogized the transcripts at issue in this case to unsworn expert reports like those considered in DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach, 576 F.3d 820 (8th Cir. 2009), and Young v. City of Providence ex rel. Napolitano, 404 F.3d 4 (1st Cir. 2005). (See Hr'g Tr. 11, Jan. 23, 2013.)

everything in the recorded statement is true");[4] see also Capobianco v. City of N.Y., 422 F.3d 47, 55 (2d Cir. 2005) (suggesting that unsworn letters could have been considered if accompanied by an affidavit that "merely reiterated what was already in the letters"); Scott v. Edinburg, 346 F.3d 752, 759 (7th Cir. 2003) (refusing to consider an expert report on the grounds that the report "was introduced into the record without any supporting affidavit verifying its authenticity").  Here, because Plaintiffs filed an affidavit affirming the truth of Sampson's prior unsworn statements, the Magistrate Judge erred in granting Amex's motion to strike all references to the Sampson transcripts from the summary judgment record.

In arguing that the Magistrate Judge's ruling was correct, Amex cites Grand Acadian, Inc. v. United States, 101 Fed. Cl. 398, 405 (Fed. Cl. 2011), for the proposition that "[h]earsay does not become admissible merely because the hearsay declarant

---

[4] Amex attempts to distinguish Citroner v. Progressive Casualty Insurance Co., 208 F. Supp. 2d 328 (E.D.N.Y. 2002), on the grounds that it involved the plaintiff's own prior statement, which was excluded from the definition of hearsay by Rule 801(d)(2)(A) of the Federal Rules of Evidence. However, the Citroner court, in determining that the prior statement could be considered at the summary judgment stage, expressly relied on the plaintiff's "sworn deposition testimony" reaffirming the truth of the statement. Indeed, without this subsequent sworn testimony, the plaintiff's prior statements contained within the unsworn transcript would create a hearsay within hearsay problem similar to the one presented by Souza's statements in the present case. See Zurich Am. Ins. Co. v. Emp'rs Ins. Co. of Wausau, No. C03-29282L, 2005 WL 1719928, at *2 n.3 (W.D. Wash. July 25, 2005).

6

testifies at trial." Grand Acadian is, however, distinct from the present case in that it dealt with the admissibility of evidence at trial. At the summary judgment stage, unlike at trial, an affidavit may be considered if it meets the requirements of Rule 56. See Hannon, 645 F.3d at 49. Amex also relies upon Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1 (1st Cir. 1994), but this reliance is misplaced. In Colantuoni, the First Circuit refused to consider in ruling on a motion for summary judgment an affidavit submitted by the plaintiff, an interested witness, that "st[ood] in direct contradiction to his deposition testimony." Id. at 4. The court also noted as "significant" the fact that "the affidavit was offered only after defendants had filed motions for summary judgment." Id. at 5. In the present case, Sampson, unlike the plaintiff in Colantuoni, is not an interested witness. Moreover, the Sampson transcripts do not contradict any prior sworn testimony by Sampson. While the transcripts are inconsistent with a prior unsworn statement, it is far from clear that the reasoning of Colantuoni applies to this type of situation. In fact, the treatise cited by the First Circuit on this point explicitly limits its discussion to "conflicts between depositions and later-filed affidavits." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2726 (3d ed. 1998) (emphasis added). Finally,

7

despite the First Circuit's mention of the timing of the filing in Colantuoni, federal courts have considered at the summary judgment stage sworn documents submitted in response to a motion to strike.  See Straus v. DVC Worldwide, Inc., 484 F. Supp. 2d 620, 633 (S.D. Tex. 2007).  Here, while Sampson's affidavit was executed after Amex's motion for summary judgment, his conversations with counsel were recorded and transcribed prior to the filing of that motion.[5]

   B.   Amex's Motion for Summary Judgment

In their objection to the Magistrate Judge's Report and Recommendation, Plaintiffs assert that they have created genuine issues of material fact, precluding summary judgment, on six alleged breaches of duty by Amex.  They also argue that they have created a genuine issue of fact material to their res ipsa loquitur claim.

---

[5] The Magistrate Judge also appeared to rely on internal inconsistencies in the Sampson transcripts.  However, any such inconsistencies in Sampson's testimony will be for the jury to weigh.

1. Specific breaches of duty[6]

   a. Failure to inspect

Plaintiffs claim that Amex breached a duty to Matias by failing to inspect the bridge scaffolding prior to his shift. Indeed, regulations promulgated by the Occupational Safety and Health Administration ("OSHA") provide, "[s]caffolds and scaffold components shall be inspected for visible defects by a competent person before each work shift." 29 C.F.R. 1926.451(f)(3). The First Circuit has held that, in actions for negligence, OSHA regulations "furnish evidence of the standard of care." Elliott v. S.D. Warren Co., 134 F.3d 1, 5 (1st Cir. 1998).

Here, Sampson, the Amex employee charged with inspecting the bridge scaffolding before the morning shift, (Defendant Amex, Inc.'s Statement of Undisputed Facts Pursuant to LR Cv 56 ("Def.'s SUF") ¶ 40, ECF No. 37), stated that he did not walk the scaffolding on the day Matias fell. Instead, he merely looked up at the scaffolding from the bottom of the cargo bay. (Ex. 10 to Pl.'s [sic] Statement of Undisputed Facts Pursuant to LR Cv 56(a)(4) ("Pls.' SUF") (Sampson Tr. 18:22-19:12), ECF No. 55-10; Ex. 11 to Pls.' SUF (Sampson Tr. 11:7-15, 22:5-11), ECF

---

[6] The Magistrate Judge provided little substantive analysis of these specific breaches. Rather, he rejected four of the six claimed breaches merely because they relied on the stricken Sampson and Souza transcripts. (See Report and Recommendation 15-16.)

9

No. 55-11.) Whether this conduct amounted to a breach of the duty imposed by OSHA regulations is a question of fact for the jury to decide. See Selwyn v. Ward, 879 A.2d 882, 886 (R.I. 2005) ("If the evidence establishes that a duty did run from defendant to plaintiff, then plaintiff is entitled to a determination of the remaining factual questions-did defendant breach the duty of care, and if so, was that breach the proximate cause of plaintiff's harm?").

Plaintiffs' negligence claim is not doomed by the testimony of Archibald Montgomery, a Senesco employee who inspected the scaffolding shortly after Sampson. Montgomery testified that "[t]here was nothing wrong" with the scaffolding when he inspected it. (Ex. 10 to Def.'s SUF (Montgomery Dep. 32:15-16), ECF No. 37-10.) If this conclusion was undisputed, Plaintiffs would be unable to establish that Amex's allegedly negligent inspection was a but-for cause of Matias's injury. This is because even a thorough investigation could not have detected a problem that did not yet exist. However, while Plaintiffs do not contest the fact of Montgomery's inspection, they do dispute the condition of the scaffolding at the time of that inspection. (Pls.' Am. Statement of Disputed Facts Pursuant to LR Cv 56(a)(3) ("Pls.' SDF") ¶¶ 48, 80, ECF No. 54.) Plaintiffs' expert, John Schueler, opined that, in order for the planks to have given way in the manner Matias described, they could not

10

have overlapped support bars, as required by OSHA regulations. (Ex. A to Def. Amex, Inc.'s Reply to Pls.' Mem. in Supp. of their Obj. to Def.'s Mot. for Summ. J. (Schueler Dep. 215:1-18), ECF No. 48-1.) Moreover, Matias testified that he was the only Senesco employee working on the bridge that day, (Ex. 5 to Pls.' SDF (Matias Dep. 78:12-17), ECF No. 54-5; see also Ex. 5 to Pls.' SUF (Chapman Dep. 103:15-17), ECF No. 55-5), and that he did not alter the scaffolding, (Matias Dep. 72:5-12). Thus, according to Matias, no Senesco employee could have created a defect in the scaffolding between Montgomery's inspection and Matias's fall. Plaintiffs attempt to cast doubt on Montgomery's assessment of the scaffolding with evidence that his daily inspection encompassed six to ten poorly lit cargo bays and lasted only thirty to forty-five minutes. (Ex. 10 to Pls.' SUF (Sampson Tr. 8:16-20, 9:7-19); Pls.' SUF ¶¶ 138-39, ECF No. 55.) A jury could reasonably infer, based on this evidence, that Matias fell due to a defect in the bridge scaffolding that pre-existed both Sampson's and Montgomery's inspections.

      b. Failure to secure planks

Plaintiffs' next asserted breach is predicated on Amex's failure to secure the planks comprising the bridge scaffolding. Jeff Wigmore testified that Amex "tried to screw down the boards . . . if possible." (Def. Amex, Inc.'s Resp. to Pl.'s [sic] Statement of Undisputed Facts Pursuant to LR Cv 56(a)(4)

11

("Def.'s Resp.") ¶ 87, ECF No. 57.) However, according to Sampson, the planks had not been screwed down when he last inspected the bridge scaffolding, (Ex. 10 to Pls.' SUF (Sampson Tr. 5:24-6:3, 6:19-7:1)), which was either one or two days before Matias's fall, (id. at 19:16-19; Ex. 11 to Pls.' SUF (Sampson Tr. 11:13-15)). The Magistrate Judge recommended granting Amex's motion for summary judgment on this asserted breach, reasoning that Wigmore's testimony was insufficient to establish that Amex had a policy to screw down every plank. This was error because Amex owed Matias a duty independent of its own internal policy. The Rhode Island Supreme Court has referred to "foreseeability of harm to the plaintiff" as "[t]he linchpin in the analysis of whether a duty flows from a defendant to a plaintiff." Selwyn, 879 A.2d at 887. In this case, it was plainly foreseeable that Matias, a Senesco employee, would be harmed by the negligent maintenance of scaffolding specifically intended for use by Senesco employees. Thus, Amex owed Matias a duty. Once such a duty has been established, whether Amex's failure to screw down the planks constituted a breach of that duty is a question of fact for the jury. Id. at 886.

      c. Failure to train

Plaintiffs further contend that Amex breached a duty to Matias by failing to properly train Sampson, the only Amex

12

employee who inspected the bridge scaffolding on the day of Matias's fall. Amex hired Sampson as a laborer approximately four months prior to that date. (Ex. 10 to Pls.' SUF (Sampson Tr. 2:21-24).) Sampson told defense counsel that he received "[a] couple of weeks" of training before becoming an inspector. (Id. at 4:3-12.) He further stated that his training was "hurried" and "rush[ed]" and that he informed Amex of his belief that he needed more training. (Id. at 26:18-27:14.) As previously discussed, Amex owed Matias a duty to maintain the scaffolding in a reasonable manner. Based on the evidence in the record, a reasonable jury could find that Amex breached that duty by failing to properly train Sampson.

            d.   Construction by competent person

Plaintiffs argue that Amex's failure to ensure that the bridge scaffolding was constructed under the supervision of a competent person constituted a breach of duty. In support of their argument, Plaintiffs cite an OSHA regulation that provides, "[s]caffolds shall be erected, moved, dismantled, or altered only under the supervision and direction of a competent person qualified in scaffold erection, moving, dismantling or alteration." 29 C.F.R. 1926.451(f)(7). Plaintiffs, however, have failed to create a genuine issue of fact on this claim. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52-53 (1st Cir. 2000) ("In opposing summary judgment, the

13

nonmoving party 'may not rest upon the mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue' of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial." (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (alteration in original)). Plaintiffs contend that, at the time of Matias's fall, only four people, Jeff Wigmore, John Souza, David Buono, and Greg Sampson, were authorized by Amex to oversee construction. Wigmore testified that he was not present during construction of the bridge scaffolding, and Plaintiffs take issue with Sampson's training. However, Plaintiffs rely on the unsworn Souza transcript, which this Court cannot consider at the summary judgment stage, for the proposition that Souza did not supervise construction. (Pls.' SUF ¶ 99.) Moreover, Plaintiffs' memorandum fails to cite any evidence that Buono was not the supervisor. (See Pls.' Mem. in Supp. of their Obj. to Report and Recommendation Granting Amex's Mot. for Summ. J. 15, ECF No. 67-1.)

    e. Modification by competent person

 Relatedly, Plaintiffs contend that Amex failed to ensure that a competent person supervised the modification of the bridge scaffolding as required by 29 C.F.R. 1926.451(f)(7). Sampson stated that an Amex employee ("one of our guys") altered the scaffolding the night before Matias's fall. (Ex. 11 to

14

Pls.' SUF (Sampson Tr. 18:21-19:15).)  When asked how he knew about the modification, Sampson responded that Amex employees asked him whether they could "move a couple of planks." (Id. at 22:14-23:2.)[7]  This discussion implies that Sampson did not supervise the modification.  Additionally, the fact that the Amex employees asked Sampson for permission suggests that none of the other three competent persons supervised the modification.  While this is a close question, a reasonable jury could infer that Amex breached its duty to Matias.

          f.   Failure to overlap support bars

Finally, Plaintiffs argue that, in order for the scaffolding to fail as it did, the planks could not have properly overlapped the support bars.  OSHA regulations require planking that is unsecured to overlap support bars by at least twelve inches.  29 C.F.R. 1926.451(b)(7).  Because this asserted breach is "essentially a variation of Plaintiffs' res ipsa loquitur argument," (see Report and Recommendation 17), this Court declines to discuss it separately.

---

[7] The portion of the Sampson transcripts relating to the unsupervised modification of the scaffolding appears, at first blush, to be based on inadmissible hearsay.  Amex, however, does not raise this argument.  Moreover, the hearsay exception for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan)" may be applicable.  Fed. R. Evid. 803(3).

2. <u>Res ipsa loquitur</u>[8]

The Rhode Island Supreme Court has referred to <u>res ipsa loquitur</u> as "a shorthand expression for circumstantial proof of negligence." <u>Konicki v. Lawrence</u>, 475 A.2d 208, 210 (R.I. 1984). Under this doctrine, the jury may infer that the harm suffered by the plaintiff was caused by the negligence of the defendant when three requirements are met:

> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

<u>Parrillo v. Giroux Co.</u>, 426 A.2d 1313, 1320 (R.I. 1981) (quoting Restatement (Second) of Torts § 328(D) (1965)). With respect to the second element, the defendant need not have exclusive control of the instrumentality of the plaintiff's injury. Rather, "[a]ll that is required is that the plaintiff produce sufficient evidence from which a reasonable man could say that, on the whole, it was more likely than not that there was negligence on the part of the defendant." <u>Id.</u> at 1319. However, the Rhode Island Supreme Court has warned, "[i]t is . . . insufficient to show that the accident is of the kind that

---

[8] As a preliminary matter, the mere fact that Plaintiffs have alleged several specific breaches of duty by Amex does not preclude them from also relying on <u>res ipsa loquitur</u>. <u>See, e.g.</u>, <u>Wilkinson v. Vesey</u>, 295 A.2d 676, 692 (R.I. 1972).

16

does not ordinarily occur without negligence; the negligence must point to the defendant." Konicki, 475 A.2d at 210.

Here, Plaintiffs have not produced sufficient evidence for a reasonable jury to conclude that Amex more likely than not created the underlying defect in the scaffolding. It is undisputed that, once construction of the scaffolding was completed, Senesco employees had access to it. While there is evidence in the record indicating that Senesco employees technically were not allowed to alter the scaffolding, the only evidence cited by the parties speaking to those employees' actual conduct is Dean Chapman's testimony that they adjusted the scaffolding as their needs required. (Chapman Dep. 88:4-23); see also Ex. 18 to Def.'s Resp. (Buono Dep. 64:22-65:5), ECF No. 57-3.)

Nonetheless, Plaintiffs can rely on the doctrine of res ipsa loquitur because of Amex's duty to inspect the scaffolding before each shift. While Plaintiffs have not sufficiently eliminated other responsible causes for the underlying defect, they have eliminated other responsible causes occurring after Sampson's inspection. This is because Matias testified that he was the only one working on the bridge scaffolding on the day of his fall and that he did not alter the scaffolding. Plaintiffs' expert, John Schueler, testified that Matias fell because the boards comprising the bridge scaffolding did not properly

17

overlap support bars. He further stated that this defect in the scaffolding would have been "fairly obvious." (Schueler Dep. 222:7-17, 249:7-250:1.) In light of this testimony, even if it chooses to disbelieve Sampson's statement that he did not walk the scaffolding, a reasonable jury could find it more likely than not that Amex was responsible for Matias's injuries, either by creating the defect in the scaffolding or conducting a negligent inspection.

III. Conclusion

For the reasons stated above, Defendant Amex, Inc.'s Amended Motion to Strike All References to Hearsay Statements of Greg Sampson and Johnnie Souza from the Plaintiffs' Amended Statement of Disputed Facts, Statement of Undisputed Facts and Amended Memorandum in Support of their Objection to the Defendant's Motion for Summary Judgment (ECF No. 58) is GRANTED with respect to the statement of Johnnie Souza and DENIED with respect to the statements of Greg Sampson. Defendant Amex, Inc.'s Motion for Summary Judgment (ECF No. 36) is GRANTED with respect to Plaintiffs' claim that Amex failed to ensure the scaffolding was constructed under the supervision of a competent

person.  Defendant's motion is DENIED with respect to the rest of Plaintiffs' claims.

IT IS SO ORDERED.


*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: March 4, 2013